IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIERSON PAIGE LOCHER,                )
                                     )
              Plaintiff,             )
                                     )
      vs.                            )      Civil Action No. 20-112-J
                                     )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
              Defendant.             )

<u>ORDER</u>

AND NOW, this 19th day of July, 2021, upon consideration of Defendant's Motion for

Summary Judgment (Doc. No. 16), filed in the above-captioned matter on February 23, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No.

14), filed in the above-captioned matter on January 25, 2021,

IT IS HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN

PART.  The Court grants Plaintiff's Motion to the extent Plaintiff seeks remand to the

Commissioner of Social Security ("Commissioner"), as set forth below, and denies the Motion in

all other respects.  Accordingly, this matter is hereby remanded to the Commissioner for further

evaluation under sentence four of 42 U.S.C. § 405(g).

## I.     Background

Kierson Paige Locher ("Plaintiff") applied for Supplemental Security Income ("SSI")

pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, on October

18, 2016.  (R. 24).  She was initially denied and requested a hearing which was held before an

Administrative Law Judge ("ALJ") on April 2, 2019.  (R. 24, 45).  In the ALJ's decision, dated

April 15, 2019, the ALJ found Plaintiff not to be "under a disability, as defined in the [Act]."  (R.

37).  Plaintiff sought review before the Appeals Council, but the Appeals Council denied her

request.  (R. 1).  Plaintiff timely filed her Complaint against the Commissioner before the Court

(Doc. No. 4), and the parties have filed cross-motions for summary judgment.

## II.     Standard of Review

This Court is authorized to review the Commissioner's final decision[1] by 42 U.S.C.

§ 405(g).  The Court "must uphold" that decision if it is supported by substantial evidence in the

record, that is, "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion."  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citing 42 U.S.C.

§ 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Reefer v. Barnhart*, 326 F.3d 376,

379 (3d Cir. 2003)).  Accordingly, when a reasonable person would be satisfied by the evidence

the ALJ cited in support of her findings, the Court will affirm even where—based on its own

review of the record—it would have decided the matter differently.  *Id.* (citing *Williams v.*

*Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).

This standard, while deferential, is not necessarily unexacting.  To facilitate reviewing

courts' inspection, an ALJ's findings must "be accompanied by a clear and satisfactory

explication of the basis on which [they] rest[]."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.

1981).  Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all

the evidence are not supported by substantial evidence.  *Id.* at 705—06.  A "clear and

satisfactory explication" of the ALJ's findings includes an explanation of both subsidiary and

ultimate findings, as well as an acknowledgement and explanation of evidence the ALJ rejected.

---

[1]     The ALJ's decision became the Commissioner's final decision when the Appeals Council
denied Plaintiff's request for review.  20 C.F.R. § 416.1481.

*Id.* at 704—05.  Regarding rejected evidence, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason."  *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

### III.  The ALJ's Decision

In this matter, the ALJ applied the five-step sequential evaluation[2] for disability determinations.  (R. 25—37).  At step one, she determined Plaintiff had not engaged in substantial gainful activity since her application date.  (R. 26).  Next, she found Plaintiff suffered from nine severe, medically determinable impairments including major depressive disorder ("MDD"), generalized anxiety disorder ("GAD"), borderline personality disorder, attention deficit hyperactivity disorder ("ADHD"), and posttraumatic stress disorder ("PTSD").  (R. 26).

At step three, the ALJ considered whether Plaintiff's impairments or a combination thereof met or equaled the criteria for any of the impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. 27).  The ALJ paid particular attention to listings pertaining to depression, bipolar disorder, anxiety, personality disorder, neurodevelopmental disorders, and trauma/stress-related

---

[2]      ALJs employ a five-step evaluation to decide whether claimants are "disabled" as that term is defined in the Act.  At step one claimants must prove they are not engaged in "substantial gainful activity."  *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)).  At step two they must prove they "suffer[] from a severe medical impairment."  *Id.*  If they make it past step two, their impairments and combinations of impairments are compared to the regulations' list of *per se* disabling impairments.  *Id.* (citing *Bowen*, 482 U.S. at 141).  Claimants who are not found disabled at step three must show at step four that they cannot return to past work.  *Id.*  An ALJ "must grant . . . benefits" to a claimant who proves she cannot return to past work unless the ALJ identifies other jobs in the national economy that would be suitable.  *Id.* (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)).  Before the ALJ determines whether a claimant can return to past work or adjust to different work, the ALJ must determine the maximum amount of work the claimant can do "despite the limitations caused by . . . her impairment(s)," *i.e.*, her residual functional capacity ("RFC").  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Hartranft*, 181 F.3d at 359 n.1).  The ALJ "must consider all evidence before" her toward the claimant's RFC and, if she rejects or discounts any evidence, both identify it and explain why it was disfavored.  *Id.*; 20 C.F.R. § 416.945(a)(3).

disorders (§§ 12.04, 12.06, 12.08, 12.11, and 12.15).  These listings require a showing of what are known as the Paragraph B or Paragraph C criteria.  To demonstrate the Paragraph B criteria, there must be a showing of "[e]xtreme limitation of one, or marked limitation of two," of four "areas of mental functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04, but, in Plaintiff's case, the ALJ found only moderate functional limitations.  (R. 27—28).  Considering the Paragraph C criteria, the ALJ found they were not demonstrated because Plaintiff appeared to get along well with authority figures, independently handled many personal needs, had not required psychiatric hospitalization since filing her benefits application, and presented as "alert and oriented with no abnormal movements, suicidal ideations or auditory/visual hallucinations" at an April 2018 mental status evaluation.  (R. 29).

At step four, the ALJ found Plaintiff retained the capacity to perform light work, *i.e.*, work that requires lifting up to twenty pounds at a time with frequent lifting and carrying only ten pounds at a time.  (R. 29) (citing 20 C.F.R. § 416.967(b) (delineating the demands of light work, which also tend to include either "a good deal of walking or standing" or sitting with "some pushing and pulling of arm or leg controls.").  The ALJ added that Plaintiff may only "occasionally balance, stoop, kneel, crouch and climb ramps and stairs and can never climb ladders, ropes and scaffolds."  (R. 29).  She determined Plaintiff could "occasionally operate a motor vehicle," but only "understand, remember and carry out" instructions if they were simple.  (R. 29).  She added that Plaintiff should only be asked to make "simple work-related decisions," could occasionally interact with coworkers, supervisors, and the public, and could "tolerate occasional changes in the work setting."  (R. 29).  The ALJ further found Plaintiff could sustain an "ordinary routine" involving work at that level "without special supervision" and that she

could maintain her work "at a consistent pace throughout the workday," so long as she did not have to meet a certain "production[-]rate pace." (R. 29).

After describing Plaintiff's RFC, the ALJ explained how she arrived at that decision. She recounted her consideration of Plaintiff's testimony, statements and testimony offered by Plaintiff's case managers, Plaintiff's medical records, her daily activities, and medical opinion evidence. (R. 30—35). Of particular note, Plaintiff's treating psychiatrist, Dr. Orr, opined in 2014 and 2018 that Plaintiff retained no work capacity,[3] but the ALJ afforded that opinion "minimal weight" because she found it to be inconsistent with the objective medical evidence. (R. 32—33). The ALJ also found the lack of any recent psychiatric hospitalization ran counter to Dr. Orr's opinion. (R. 32—33). The ALJ likewise afforded little weight to most of the opinion provided by Dr. Miller, whose opinion was based on a consultative examination. (R. 33).[4] The

---

[3]    In 2014, Dr. Orr based his opinion on "the severity of [Plaintiff's] emotional symptoms," which included "[d]epressed mood, anhedonia, suicidal thoughts, [i]ncreased irritability, mood lability, racing thoughts, impulsivity, [p]anic symptoms with [elevated] [h]eart [r]ate, [c]hest [p]ain, shortness of breath, dizziness, [and] tremor." (R. 336). In 2018, Dr. Orr indicated that Plaintiff suffered from many significant symptoms, including "[p]oor memory," "[a]ppetite disturbance with weight change," "[s]leep disturbance," "[p]ersonality change," "[m]ood disturbance," "[e]motional lability," "[d]elusions or hallucinations," and "[s]ocial withdrawal or isolation." (R. 1139—40). Dr. Orr further indicated that Plaintiff was not a "malingerer" before opining, as he did in 2014, that she had no capacity for work. (R. 1140, 1145).

[4]    Dr. Miller performed the consultative examination in 2017 and found Plaintiff suffered impaired attention and concentration likely due to "emotional distress secondary to depression and anxiety." (R. 426). Dr. Miller also found Plaintiff's insight poor, though she found Plaintiff's judgment fair, her memory intact, and her cognitive functioning average to above average. (R. 426). Dr. Miller documented Plaintiff's diagnoses to include borderline personality disorder, PTSD, and bipolar disorder. (R. 427). She indicated Plaintiff exhibited "very poor judgment during manic episodes" and recommended "that [Plaintiff] continue with mental health treatment as currently provided." (R. 427). She further documented her findings by degree of limitation, finding Plaintiff suffered *marked* limitation regarding appropriate interaction with the public and supervisors, the ability to "respond appropriately to usual work situations and to changes in a routine work setting," and making "judgments on complex work-related decisions." (R. 429—30). She opined moderate limitation regarding appropriate interaction with co-workers and making "judgments on simple work-related decisions." (R. 429—30).

ALJ explained that she would afford the most extreme findings in Dr. Miller's opinion only little weight because they were inconsistent with the "totality of the evidence."  (R. 33).

Finally, with the assistance of a vocational expert ("VE"), the ALJ determined at step four that Plaintiff's RFC would not permit her return to past work as an administrative assistant and insurance claims negotiator/claims adjuster.  (R. 35—36).  However, at step five, the ALJ found Plaintiff could adjust to other work, specifically, work as a merchandise marker, routing clerk, and photo machine operator.  (R. 36—37).  Accordingly, the ALJ found Plaintiff not disabled.  (R. 37).

## IV.    Legal Analysis

Plaintiff argues the ALJ's decision should be reversed because it is contrary to law and unsupported by substantial evidence.  She specifically challenges the ALJ's consideration of Dr. Orr and Dr. Miller's medical opinions, arguing that if the ALJ had afforded those opinions greater weight, she would have been found disabled either at step three or at steps four and five of the five-step evaluation.  The Court is not persuaded that the ALJ's explanation for why she opted against affording Dr. Orr and Dr. Miller's opinions greater weight is totally deficient as Plaintiff claims.  However, the Court does find that the ALJ's decision is deficient insofar as she failed to address evidence—including, to an extent, Dr. Orr and Dr. Miller's opinions— concerning the amount of time Plaintiff would be off-task or absent from work.  The Court also finds the ALJ failed to adequately explain why she found Plaintiff's daily activities undermined Plaintiff's testimony and other evidence.  For these reasons, the Court will order remand.[5]

---

[5]     The Court will focus on the deficiencies it perceives as they affect the ALJ's RFC determination, but notes that when the ALJ further considers Plaintiff's daily activities on remand, that reconsideration may affect what weight is appropriate to afford Dr. Orr and Dr. Miller's medical opinions.  If those opinions are afforded greater weight, that would necessitate further inquiry into whether Plaintiff's impairment(s) meet or equal a listed impairment(s).

An accurate RFC determination is critical to proper resolution of steps four and five in the five-step disability determination. 20 C.F.R. §§ 416.920(a)(4)(iv)—(v); 416.945(a)(5)(i)—(ii). The ALJ must base her RFC determination "on all the relevant evidence in [the claimant's] case record." *Id.* § 416.945(a)(1). That includes claimants' "complete medical history," consultative exams, treating source statements, and statements from the claimant and the claimants' "family, neighbors, friends, or other persons," if applicable. *Id.* § 416.945(a)(3). If the ALJ rejects evidence to arrive at the RFC determination, she must provide a reason for rejecting that evidence, and she must explain how conflicts among "probative evidence in the record" were resolved. *Cotter*, 642 F.2d at 705.

In this case, the ALJ failed to consider evidence concerning Plaintiff's treatment regimen and how its demands on Plaintiff's time could conflict with a regular work schedule. Plaintiff testified that she manages her mental health disorders through a combination of "[m]edication and therapy and doctor's appointments and . . . a peer specialist and a blended case manager." (R. 54). She indicated that she required at least seven medications administered daily and further indicated she was assisted in appropriately medicating by her mother. (R. 56—64, 259, 323).

Plaintiff's testimony in this regard found support in the testimony offered by her blended case manager, Ms. Kuyat. Ms. Kuyat testified that in her role as Plaintiff's blended case manager she was responsible for coordinating Plaintiff's care. (R. 77). To that end, Ms. Kuyat testified that she visited with Plaintiff at her home twice each month and further testified that Plaintiff saw her psychiatrist monthly, her therapist twice each month, and her peer support person weekly. (R. 77—78). Ms. Kuyat's testimony in this regard was consistent with statements in the record from Plaintiff's previous blended case manager, Ms. Zankey, who indicated that she started working with Plaintiff in 2016. (R. 1883). Ms. Zankey similarly

described Plaintiff's treatment to include monthly to bimonthly "psychiatric medication management services," biweekly therapy, weekly meetings with a peer support specialist, and case management services every three weeks.  (R. 1883).[6]  When Dr. Orr opined as to Plaintiff's work ability, he also indicated that Plaintiff was "com[ing] in every 2 [months] for medication checks and every 2 [weeks] for therapy."  (R. 1139).  Dr. Orr also estimated that Plaintiff would be absent from work more than three times each month.  (R. 1142).  Dr. Miller noted in her opinion that Plaintiff should continue to follow her course of mental health treatment.  (R. 427).

Considering this evidence—Plaintiff's allegations, her case managers' statements, and the opinion evidence—it appears Plaintiff's necessary mental health treatment required between seven and nine monthly commitments: (1) therapy one to two times/month, (2) peer support four to five times/month, (3) blended case management approximately one time/month, and (4) psychiatric medication management appointments one time/month or once/two months.  These commitments are not addressed in the ALJ's decision even though the VE testified that employers would tolerate only 10—20% time off task and eight absences in the first *year* of employment.  (R. 85).  That raises the question, how might an individual who requires up to nine monthly commitments to manage her mental disorders and symptoms limit her total yearly absences to just eight?

This question is one the ALJ must answer, and the answer must demonstrate the ALJ's consideration of the evidence pertaining to off-task time and absenteeism.  To that end, the Court notes that particular care is required in evaluating disability claims that are based, primarily, on mental health disorders.  Claimants who suffer from mental disorders may "appear to function

---

[6]     The ALJ afforded Ms. Zankey and Ms. Kuyat's statements some weight, devaluing them only slightly because they lacked a "function-by-function analysis" of Plaintiff's abilities.  (R. 34).

well" because they "adopt a highly restricted and/or inflexible lifestyle."  SSR 85-15, 1985 WL
56857 (S.S.A. Jan. 1, 1985).  These claimants may "cease to function effectively" in regular
work environments.  *Id.*  It is critical that in considering the claimant's record to determine work
capacity and, ultimately, disability, the ALJ has a whole workday in mind.  ALJs' RFC
determinations are based on the maximum amount of "work activity" claimants can sustain on "a
regular and continuing basis," 20 C.F.R. § 416.945(b)—(c), that is, "8 hours a day, for 5 days a
week, or an equivalent work schedule."  SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996).

Whether Plaintiff can maintain her treatment while working a full-time job without
exceeding eight absences in the first year is an open question.  Upon further inquiry, the ALJ
may find Plaintiff's treatment can be arranged to accommodate a full-time work schedule.  That
determination is not one this Court will decide independently based on its own review of the
record.  *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).  It is the need for further
discussion and consideration of this issue that warrants remand—the Court is not implying that
Plaintiff's treatment necessarily prevents her from meeting the attendance and time-off-task
requirements of full-time employment.

On remand, the ALJ should also expand on her consideration of Plaintiff's activities of
daily living.  In her decision, the ALJ took note of Plaintiff's daily activities, including some
cooking, cleaning, laundry, watching television, listening to the radio, attending to personal
hygiene, occasionally driving, and attending family events.  (R. 32).  She indicated that these
daily activities undermined the alleged severity of Plaintiff's symptoms (R. 32) and supported
the RFC determination.  (R. 35).  It is unclear to the Court how those particular activities serve to
undermine Plaintiff's allegations and support the RFC.

Plaintiff alleged that the symptoms of her mental health disorders included panic attacks, agoraphobia, and paranoia, which made it difficult for her to leave her residence.  (R. 30).  Plaintiff's case manager testified that Plaintiff struggled to be in public and, on account of that difficulty, she went to Plaintiff's residence for their meetings.  (R. 30).  It is thus perplexing that the ALJ found predominantly home-bound activities—cooking, cleaning, laundry, etc.—served to undermine Plaintiff's allegations and supported the RFC.  A "logical bridge" connecting the ALJ's consideration of Plaintiff's activities of daily living to the ALJ's findings is lacking. *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014).

Without further explanation, it would appear to the Court that rejecting evidence indicating a claimant's mental disorders affect her when she is *outside* the home with evidence that she engages in various *at-home* activities constitutes a rejection of the former for the wrong reason.  *Cotter*, 642 F.2d at 706.  Claimants who allege significant limitations in their public functioning may very well appear to function well in private living space.  Such claimants need not "vegetate in a dark room" to be found disabled.  *Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) (citing *Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981)); *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (faulting the ALJ for failing to recognize that social anxiety can make tasks that are "easy to perform inside the home potentially very difficult to perform outside the home."); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220–21 (D. Or. 2015) (explaining claimants need not be "utterly incapacitated" to be disabled).  Because the ALJ has not provided a reasonable explanation as to why Plaintiff's at-home activities undermined her testimony and supported a finding that she can sustain full-time work outside the home, the Court will remand.

**V.     Conclusion**

10

For the foregoing reasons, the Court finds further administrative proceedings are necessary.  Accordingly, the Court hereby remands this matter to the Commissioner for reconsideration consistent with this Order.

<u>s/ Alan N. Bloch</u>
United States District Judge

ecf:    Counsel of record